# The Schindler Law Firm, P.C.

**Attorneys at Law**
141 North Meramec Avenue, Suite 201
Saint Louis, Missouri 63105

Phone: (314) 862-1411
Facsimile: (314) 862-1701
Email: josh@schindlerlawfirm.com

August 31, 2017

The Honorable John A. Ross
United States District Court Judge
Thomas F. Eagleton Courthouse
United States District Court
111 S. Tenth Street
St. Louis, MO 63101

RE: John M. Sells

Dear Judge Ross:

I have known John Sells for close to a decade and I have been his lawyer for approximately five years during that time. Obviously, I am saddened by the accusations against John and his plea of guilty to the charges filed. At the same time, I would expect John to accept responsibility for his actions and am glad he has done so.

As an officer of the court and as a person, I am conflicted. On the one hand, John's misuse of funds deprived his residents of important resources. But, on the other hand, I know that John's judgment was clouded by the ever present need to feed his addictions. The 2014 theft from John's company by a third party payroll company added a tremendous amount of stress to John and I believe it exacerbated this affliction. He tried several times to get treatment but failed to succeed each time. Now, in the end, John has paid an enormous price for his wrongs -- he has lost his family business, most of his friends hardly acknowledge his existence and much of his family won't talk to him. Most importantly, he has lost his self-respect. His name is forever tarnished in the community by front-page headlines, and he feels embarrassed by the looks on the faces of his own children.

In the end, no punishment imposed by this Court will cause any greater pain then that which John inflicted upon himself. The remorse he feels is borne not from his fear of retribution but rather from his recognition of the pain he caused others. He is deserving of this court's leniency because the wrong does not reflect the true measure of John Sells, who is fundamentally a good person.

Very truly yours,

Joshua M. Schindler

Honorable John A. Ross
United States District Court Judge
Thomas Eagleton Court House
111 S. 10th Street
St Louis, MO 63105

Your Honor:

I am writing this letter to you in reference to my father, John Sells. I have mixed feelings about writing you, as my family has been through a lot with my father. I finally decided to write because my father is good man, despite his failings. He's an addict, and addicts can seem selfish. But addiction is a disease. My father has done some things in the past few years, like committing the crimes he pled guilty to, that have overshadowed a lifetime of giving to others.

I cannot tell you how many people he has helped build careers for over his lifetime. I went to a health care convention last weekend ran into a middle aged man from North St. Louis who my father previously employed. He walked up to me, shook my hand, and asked "How's your dad?" I told him my dad is doing the best he can under the circumstances. He told me my father gave him an opportunity that no one else ever did or even thought about. I asked what he meant. He said my father needed someone to run his home in North County. At the time, he was working as the housekeeping director for my father's St. Charles home. The St. Charles administrator introduce him to my father. They talked for a while then my father told me he wanted him to run the North County home. He said he now runs a facility in St. Louis and has my father to thank. This meant something to me. It was a big deal. I'm still in the nursing home business and the thought of discussing my father can be humiliating at times. This was a good reminder to me that despite his failings, he's done a lot of good for a lot of people and always means well. It reminded me that my father was always supportive of me, made it to my school events, and showed up at my after school sports. It's been easy to forget about these things over the last year and beyond.

My step-mother and I tried to get my father help multiple times. But he always seemed to fall back on alcohol, drugs, and bad decision-making generally, especially over the last five years. I left the family business as his conditioned worsened. My father is not a bad man, even though I'm angry at him for many of the horrible choices he's made over the years, like the choices that bring him to federal court. I know he's ashamed, as he should be. I know he hurts for the pain he's caused others. But I also know he has a disorder and would not harm anyone intentionally. His instinct is to help, not hurt people, even though he's hurt many. I hope your sentence will take all of this into consideration.

Sincerely,

Ben Sells

# Maria Sells



Chesterfield, MO

Honorable John A. Ross
Eastern District of Missouri
Thomas Eagleton Court House
111 S. 10th Street
St Louis, MO

Dear Judge Ross,

I met John Sells in 2003 through a mutual friend. At the time, I worked in St Louis while John lived and worked in Sikeston. We got engaged a few months later and married in December. Early on we spent a lot of time together traveling and I eventually went to work at his business.

In early 2006, we moved the business and ourselves from Sikeston to St Louis. We planned to have a child together and I wanted to live closer to my family.

On November 22, 2006, we had our daughter. I stayed home with her more and worked less. John worked and traveled more on business. But we still spent a lot of time together at business dinners and gatherings.

John drank when I first met him and sometimes acted erratically. But it got worse after the birth of our daughter. I began to suspect infidelity and hired a private investigator, who confirmed my suspicion. John had an affair with a woman and was drinking heavily and using cocaine. I waited about a month then confronted him. He agreed to check into a treatment center and did well for about a year, but then fell back.

In 2008, John checked into a facility in Minnesota. I went there with him. The psychiatrist he met with thought there was more going on with John than just addiction. But I didn't know what. I stood by John during the next few years, though it was not always easy. In late 2010, John sought out treatment at Sierra Tucson, a facility in Arizona. I went with John for the first few days. He told the facility about a bone fragment stuck in his frontal lobe after surgery he had a few years before I met him. This seemed to explain what the psychiatrist at the Minnesota facility suggested to me a few years earlier. It also seemed to explain things to the psychologist at Sierra Tucson. John did well when he returned home. But like the last time, his behavior worsened within two years and I threatened to leave him again. He'd started to

# Maria Sells



Chesterfield, MO

spend more time at work and would occasionally go on a 2-3 day alcohol and drug binge episodes for no apparent reason. He checked into a clinic in California to save the marriage, which ultimately didn't work.

John has always been good father and tried hard to be a good husband. But the circumstances of our marriage became unhealthy and I began making plans to leave him when our daughter got older.

In 2013 the company that processed our payroll stole about $1,000,000 from the company, which led the IRS to impose fines and penalties on top of unpaid taxes. John's banks accelerated the company's loans when they found out and the company gradually lost most of its assets. This caused an enormous amount stress for John and his behavior deteriorated further. I filed for divorce in 2014 because it all became just too much.

John and I have talked about his crime. He accepts responsibility for his actions and is ashamed of himself. He knows he set a poor example for our daughter and put others at risk – not to mention the money he took from the government.

Sadly, John really cared for his residents. When we used to visit the nursing homes, he'd sit and talk to them about their lives and families. He'd recognize staff for exceptional service. I've seen John give his cell number to families to use if they ever had a concern and take their calls when they occasionally used it. I've also seen him pay funeral expenses for families who couldn't afford to bury their loved ones.

I write all of this because despite his shortcomings and the hurt I've been through, John has a good heart. He cares for others and would never intentionally hurt anyone. It's difficult to reconcile the two Johns, the caring, good hearted man I know who loves his daughter and the people he meets and the self-destructive man who hurts himself and others. I'm not a doctor, but I sense there is some deeper going on with John that brings him before you.

I hope you will take all of this into account when you sentence John and get him the help and supervision he needs.

Sincerely,

Maria Sells

The Honorable John A. Ross
United States District Court judge
111 S. 10th Street
St Louis, MO  63105

Dear Judge Ross,

John Sells and I married in 1986. We were married for 15 years and have two children. Our daughter is 30 and our son is 28 with a wife and newborn daughter. Both are good, productive citizens.

John started his nursing career at a young age. He was in high school and worked in the dietary and laundry departments at a home his mother ran. She wanted him to learn the business from the bottom up so he could take over when she retired. I worked with John and his mother after we married. We continued to work together in the business after she retired and ran the business well.

John was a stable provider for me and the children. He attended all their events while they were growing up and spent as much time with them as he could. He suffered with bouts of depression and anxiety but always managed to get through them. John had surgery in 1999 which led to a tear I the dura on his frontal lobe. The surgery seemed to affect his behavior. He began to drink more and stay out all night. I discovered drugs on him not long after and receipts from strip clubs and gambling at casinos. Needless to say, this affected our marriage. We grew distant, argued a lot, and divorced three years later. Our children were 11 and 15 at the time. John remained involved with them and financially and emotionally supported them.

John told me about his offense around the first of this year. It saddened me, but did not really surprise me. His decision-making process eroded over the years. John and I have discussed his crime several times since. He is remorseful for and dumbfounded by his actions. He feels ashamed of himself and is wounded by the pain he has put others through, family and otherwise. Though he has committed some serious wrongs, John is a good man at heart. I hope you will consider this letter and my thoughts when you sentence him.


Respectfully,

Angela R. Jones